FILED

2008 Nov-03  PM 12:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| GWENDOLYN C. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 07-G-1797-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## **MEMORANDUM OPINION**

The plaintiff, Gwendolyn C. Johnson, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Randall C. Stout, determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment.  In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform her past relevant work.  [R. 22].  Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the

alleged pain arising from that condition or (3) that the objectively
determined medical condition is of such a severity that it can be reasonably
expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this

circuit medical evidence of pain itself, or of its intensity, is not required.

While both the regulations and the Hand standard require objective medical
evidence of a condition that could reasonably be expected to cause the pain
alleged, neither requires objective proof of the pain itself.  Thus under both the
regulations and the first (objectively identifiable condition) and third (reasonably
expected to cause pain alleged) parts of the Hand standard a claimant who can
show that his condition could reasonably be expected to give rise to the pain he
alleges has established a claim of disability and is not required to produce
additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and
416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added).  Furthermore, it must be kept in mind that "[a]

claimant's subjective testimony supported by medical evidence that satisfies the pain

standard is itself sufficient to support a finding of disability."  Foote at 1561.  Therefore,

if a claimant testifies to disabling pain and satisfies the three part pain standard, she must

be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must

articulate reasons for that decision.

It is established in this circuit that if the Secretary fails to articulate reasons for
refusing to credit a claimant's subjective pain testimony, then the Secretary, as a
matter of law, has accepted that testimony as true.  Implicit in this rule is the
requirement that such articulation of reasons by the Secretary be supported by
substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11ᵗʰ Cir. 1987).  Therefore, if the ALJ either fails to

articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are

not supported by substantial evidence, the pain testimony of the plaintiff must be accepted

as true.

## FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security

cases.  These problems have been recognized by the courts.  In Sarchet v. Chater, 78 F.3d

305 (7ᵗʰ Cir. 1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and
> mysterious, disease, much like chronic fatigue syndrome, with which it
> shares a number of features.  See Frederick Wolfe et al., "The American
> College of Rheumatology 1990 Criteria for the Classification of
> Fibromyalgia: Report of the Multicenter Criteria Committee," 33 Arthritis
> & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee
> & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995
> 708-09 (1995).  Its cause or causes are unknown, there is no cure, and, of
> greatest importance to disability law, its symptoms are entirely subjective.
> There are no laboratory tests for the presence or severity of fibromyalgia.
> The principal symptoms are "pain all over," fatigue, disturbed sleep,
> stiffness, and—the only symptom that discriminates between it and other
> diseases of a rheumatic character—multiple tender spots, more precisely 18
> fixed locations on the body (and the rule of thumb is that the patient must
> have at least 11 of them to be diagnosed as having fibromyalgia) that when
> pressed firmly cause the patient to flinch.  All these symptoms are easy to
> fake, although few applicants for disability benefits may yet be aware of the
> specific locations that if palpated will cause the patient who really has
> fibromyalgia to flinch.  There is no serious doubt that Sarchet [the plaintiff]
> is afflicted with the disease but it is difficult to determine the severity of her
> condition because of the unavailability of objective clinical tests.  Some
> people may have such a severe case of fibromyalgia as to be totally
> disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia
> Syndrome (ABC of Rheumatology)," 310 British Med.J. 386 (1995);
> Preston v. Secretary of Health & Human Services, 854 F.2d 815, 818 (6th

Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306-307.  Other courts have also recognized that fibromyalgia can be disabling.  Kelly v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its elusive nature, the presence of fibromyalgia can be objectively verified in some cases.  As noted in Sarchet, there are tender areas, or "trigger points," which are well defined and cause pain upon palpation.  Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed.  Kelly at 589 (diagnosis of fibromyalgia is clinically supported by trigger point injections).  Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard.

## WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling.  In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY WHEN PAIN OR OTHER SUBJECTIVE SYMPTOMS ARE INVOLVED

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the  Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony is credited.

Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit the plaintiff's pain testimony is found not to be supported by substantial evidence.

In <u>Varney v. Secretary of Health and Human Services</u>, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. <u>Id</u> at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." <u>Id.</u>  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As <u>Varney</u> recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  <u>Id.</u>

## DISCUSSION

In his decision, the ALJ found that the plaintiff suffered from the severe impairments of "fibromyalgia, obesity; and degenerative joint disease (DJD)."  [R. 21]. However, he found that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. . . ."  [R. 22].

Without question, the plaintiff has an underlying condition which could give rise to disabling pain.  In applying the 11th Circuit's pain standard, the ALJ found that:

> the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

[R. 24].  This conclusion is not based on substantial evidence.

The plaintiff was 50 years old at the time of the ALJ hearing.  [R. 168].  After examination on August 19, 2005, her treating rheumatologist,  R. Macon Phillips, Jr., M.D., found "[t]rigger points are present in virtually all of the usual locations."  [R. 121].  On September 16, 2005, Dr. Phillips opined that the plaintiff "clearly has fibromyalgia."  [R. 139].  "Rexamination shows trigger points," Dr. Phillips said, "and she is having more and more pain on a daily basis."  [Id.].  Also, on January 23, 2006, Dr. Phillips noted that the plaintiff "continues to have pain and stiffness."  [R. 134].  "I continue to believe she has fibromyalgia," he concluded.  [Id.].  In October and November, 2006, the plaintiff was treated by Dwight Luckett, M.D., of Central North Alabama Health Services, Inc.  She continued to complain of pain, and Dr. Luckett prescribed Celebrex, Ultram, Lorcet Plus and Flexeril.  [R. 155-162].

At the hearing, the plaintiff testified she was taking Lorcet Plus and Motrin, but was still hurting.  [R. 188].  She rated her pain level at eight to 10, and that it remains

at that level "[n]o matter what I take.  I'm taking all this medicine and it's not even

working for me."  [R. 188-189].  ALJ Stout summarized her pain testimony as follows:

> The claimant testified that she has pain in the neck, shoulders, elbows,
> wrists, and fingers.  She cannot open a jar or even a coke [sic] bottle.  She
> has difficult [sic] climbing even one step, loses her balance, and sometimes
> falls.  She testified that she can walk maybe one city block before she starts
> tingling from the waist down.  This happens even when sitting or sleeping.
> She also has feet pain which makes walking difficult and has pain in both
> legs.  She has difficulty dressing and lies down 3 to 4 times a day.  She
> cannot concentrate more than 10 minutes and does not finish anything.  She
> keeps notes in order to remember things such as keeping a chart of
> medication.  <u>This is inconsistent with her further testimony that she
> reads/studies the Bible and attends church and occasionally cooks and
> shops.</u>

[R. 22-23].(emphasis added)

   The apparent "inconsistency" cited by the ALJ does not support a finding

that the plaintiff's pain testimony is not true.  The ability to perform the limited activities

noted by the ALJ does not rule out the presence of disabling pain.  The ability to watch

television, do occasional shopping, or perform other sporadic activities does not mean the

plaintiff is not disabled. In this circuit it has been recognized that "participation in

everyday activities of short duration, such as housework or fishing" does not disqualify a

claimant from disability.  <u>Lewis v. Callahan</u>, 125 F.3d 1346, 1441 (11th Cir. 1997).  As

has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic
> or an amputee.  Similarly, shopping for the necessities of life is not a
> negation of disability and even two sporadic occurrences such as hunting
> might indicate merely that the claimant was partially functional on two
> days.  <u>Disability does not mean that a claimant must vegetate in a dark room</u>

excluded from all forms of human and social activity. . . . It is well
established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability

to engage in gainful employment that is the key, not whether a plaintiff can perform

minor household chores or drive short distances.  In Easter v. Bowen, the court observed

as follows:

> Moreover, an applicant need not be completely bedridden or unable to
> perform any household chores to be considered disabled. See Yawitz v.
> Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to
> perform as required on a daily basis in the "sometimes competitive and
> stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d
> 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138,
> 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are

concerned with substantial capacity, psychological stability, and steady attendance . . . ."

867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

        With this standard in mind, it is clear that the ALJ's articulated reasons for

rejecting the plaintiff's pain testimony are not supported by substantial evidence.

Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that

court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons

for refusing to credit the claimant's pain testimony, but none of these reasons is supported

by substantial evidence.  It follows, therefore, that claimant's pain testimony has been

accepted as true."  Hale, at 1012.

Under this circuit's pain standard, objective proof of the pain itself is not required.  Moreover, the medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").  As Judge Allgood observed in Lamb v. Bowen:  "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain.  No examining physician ever questioned the existence of appellant's pain.  They simply found themselves unable to cure the pain."  847 F.2d 698 (11th Cir. 1988).

Because the ALJ's reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, her testimony must be taken as true.  At the hearing, the ALJ questioned a vocational expert, Patsy Bramlett:

ALJ:  If the claimant as a result of her combined impairments had to take unscheduled work breaks throughout the workday would that affect her prior work?

VE:  Yes, sir.

ALJ:  And would that also affect the wide world of unskilled work?

VE:  Yes, sir.  That would rule out all work.  Prior work and the jobs – other jobs in the unskilled range of work.

ALJ:   And asking that I was trying to take into consideration the
claimant's testimony about the fact that she would have to sit or lie
down a significant portion of the day and also with that testimony if
I gave you a hypothetical that would say that the claimant would
have to miss two or more days of work on a monthly basis would
that affect the wide world of unskilled work?

VE:   Yes, sir.  That's going to rule out all work.

ALJ:   And if as a result of pain on – I believe the claimant testified is no
less than an eight, which I believe would be consistent with a
moderately severe or rather greater than a moderate degree of
impairment concentration, persistence and pace.  So, if her pain
would be greater than – it would be such that it would affect her
ability to concentrate, persist and in her pace would that affect the
wide world of unskilled work?

VE:   Yes, sir.  That is going to rule out all work.

[R. 201-202].  Based on that expert testimony, it is clear that the ALJ's conclusion that

the plaintiff "has the residual functional capacity to perform medium exertional work" is

not supported by substantial evidence.  [R. 22].

## CONCLUSION

This is a case where "the [Commissioner] has already considered the

essential evidence and it is clear that the cumulative effect of the evidence establishes

disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In

such a case the action should be reversed and remanded with instructions that the plaintiff

be awarded the benefits claimed.  Id.

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 3 November 2008.

_____
   UNITED STATES DISTRICT JUDGE
            J. FOY GUIN, JR.